IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No.: 20-CR-2016 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | DEFENDANT'S BRIEF IN SUPPORT |
| DUSTIN CHADWICK HERHOLD, ) | OF SENTENCING MEMORANDUM |
| ) | |
| Defendant. ) | |

Dustin Herhold, through counsel, hereby submits the following brief in support of his sentencing memorandum. Mr. Herhold will be sentenced at 1:00 p.m. on January 8, 2021, before United States District Judge C.J. Williams. Mr. Herhold pleaded guilty on August 6, 2020, to one count of Attempted Sexual Exploitation of a Child, in violation of 18 U.S.C. §§ 2251(a) and 18 U.S.C. § 2251(e). The parties have agreed to recommend a 188-month sentence. Mr. Herhold has objected to the application of a five-level sentencing enhancement under USSG § 4B1.5(b)(1) for engaging in a pattern of activity involving prohibited sexual conduct, and the government "has agreed not to pursue the five level pattern enhancement pursuant to USSG §4B1.5(b)(1)." Gov't Sent'g Mem. 1, ECF No. 46. The requested sentence of 188 months thus, as explained further below, represents a sentence at the top of what Mr. Herhold argues is his appropriate sentencing guideline range of 180–88 months.

**I. Relevant Factual and Procedural Background**

On May 7, 2019, Kik Interactive, which runs an internet messaging service, notified Homeland Security Investigations in Cedar Rapids, Iowa, of leads involving suspected child pornography in that area. PSR ¶ 6. Three Kik accounts with similar names were associated

1

with images of apparent child pornography.  *Id.*    Tracing these accounts back to Mr. Herhold, authorities searched his apartment and seized a tablet, which contained at least one of the images originally identified by Kik.  *Id.* ¶ 7.

In an interview conducted with Mr. Herhold on March 2, 2020, he admitted to communicating with what he believed were adult women on a separate messaging service, Google Hangouts.  *Id.* ¶ 8.  Mr. Herhold admitted to having chats with a person identified as "Rose William," and requesting images of her purported minor daughter, "Sara," in exchange for gift cards.  *Id.*  Mr. Herhold acknowledges these interactions today, and they form the factual basis of his guilty pela to attempted sexual exploitation of a child in violation of 18 U.S.C. §§ 2251(a) and 18 U.S.C. § 2251(e).   However, Mr. Herhold objects that Sara was not a real minor, whatever his beliefs at the time of the instant offense.   In all likelihood, "Sara" was simply fabricated by "Rose William" in an effort to obtain compensation from Mr. Herhold; Mr. Herhold notes that there is no evidence, mentioned in the presentence report or elsewhere, that "Rose William" or any other person with whom he communicated about the potential production of child pornography anctually sent images constituting child pornography to Mr. Herhold.   It is Mr. Herhold's understanding that the government does not intent to attempt to prove that "Sara" was an actual minor.   "[T]o date, authorities have been unable to locate 'Sara,' . . . no victim impact statement has been submitted, and no restitution has been requested."   PSR ¶ 16.

Subsequent forensic analysis of the tablet showed that it had received 22 unique images of child pornography between approximately February and March 2019.  PSR ¶ 9.   There were also six videos.  *Id.*  Forensic analysis also showed about 1,300 messages between Mr. Herhold and "Rose William," some of which discussed potential sexual exploitation of "Rose's" supposed minor daughter "Sara."  *Id.* ¶¶ 10–15.   Mr. Herhold appears to have sent at least two

gift cards on one occasion in exchange for images of cild pornography to involve "Sara," but "Rose" appears to have string Mr. Herhold along, asking for more money and never sending the images. *Id.* ¶¶ 14–15. At times, "Rose" invented fanciful reasons for being unable to produce child pornography involving her daughter, such as that the daughter had just been suddenly and inexplicably rushed to the hospital. *Id.* On at least one other occasion, Mr. Herhold communicated with a different person, supposedly "Stella Paul," also likely a confidence artist, regarding potential exploitation of an equally fictitious minor, termed "Unidentified Victim #1" on the presentence report. *See* PSR ¶¶ 25, 29.

In 2019, Mr. Herhold's reported earnings to the Social Security Administration were $5,729. PSR ¶ 59. He was either self-employed as a handyman or, toward the end, working for $9 an hour as a "night auditor" at Ethos Hospitality—essentially, a night clerk at a local motel. *Id.* ¶ 58. During this time, he was receiving outpatient mental health treatment through Regional Health Development in Waterloo and Cedar Falls, Iowa, having been diagnosed at an early age with developmental delay, emotional disturbance, ADHD, Asperger's Syndrome, and, later, unspecified "depress psychosis" and alcohol abuse. PSR ¶¶ 47A, 48. Mr. Herhold was raised by his grandparents from age 3, and has lived by himself since age 18, aside from stints in mental health and assisted living facilities.[1] *Id.* ¶ 43. He seems not have had significant family support as an adult in dealing with his mental health.

Mr. Herhold was assessed a base offense level of 32. PSR ¶ 18; USSG § 2G2.1. He received a two-level enhancement for an offense involving a minor between the ages of 12 and 15. *Id.* ¶ 19; USSG § 2G2.1(b)(1)(B). He received a further increase for using a computer in his offense. PSR ¶ 20; USSG § 2G2.1(b)(6)(B). This resulted in an adjusted offense level of 36.

---

[1] Although Mr. Herhold was also, as reported by the presentence report, living with his fiancée at one point, and she has given birth to their child, his fiancée has since left him.

He was also assessed a five-level enhancement for a pattern of activity involving prohibited sexual conduct allegedly involving "Sara" and "Unidentified Victim Number 1." PSR ¶ 25; USSG § 4B1.5(b)(1). This was based upon multiple contacts with these minors' purported guardians for the purpose of sexual solicitation. *Id.* Mr. Herhold objects to this enhancement, as detailed below, and the government does not intend to pursue it, as indicated above. With acceptance of responsibility, the presentence reports assesses Mr. Herhold a total offense level of 38, although based upon his objection, he believes it should be correctly assessed at 33. PSR ¶¶ 26–28. At criminal history category II, this resulted in an advisory guideline range of 262–327 months, although Mr. Herhold objects that, without the five-level enhancement, the range should be 180–188, based upon a total offense level of 33, a criminal history category II, and a mandatory statutory minimum sentence of 180 months.

## II. The Court Should Not Apply the Five-Level Pattern of Prohibited Conduct Enhancement Under USSG § 4B1.5(b)(1) Because All Minors Purportedly Involved In the "Pattern" Were Fictitious and Not Police Officers.

If a defendant commits a "covered sex crime," including 18 U.S.C. §§ 2251(a) and 18 U.S.C. § 2251(e), and engaged in a "pattern of activity involving prohibited sexual conduct," five points are added to his offense level. USSG § 4B1.5(b). A pattern of activity exists if "on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." USSG § 4B1.5 cmt. n.4(B). While predicate conduct occasions may occur during offense conduct and include offense conduct resulting in the instant conviction, they must at an irreducible minimum involve "a minor." *Id.*

> For purposes of this guideline, "minor" means (A) an individual who had not attained the age of 18 years; (B) an individual, whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 18 years; and (ii) could be provided for the purposes of engaging in sexually explicit conduct; or (C) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years.

4

USSG § 4B1.5 cmt. n.1.

The language of the guidelines is clear. With two limited exceptions, a minor must actually be, as in conventional English, a "person" who, at the time of the offense, "had not attained the age of 18 years." Such minors must actually exist, i.e. actually be persons of the specified age. This is clear both from the guidelines' definition and from the fact that the limited and specific expansions of the definition, which include minors who do not actually exist, i.e. are fictional, expressly include the qualification "whether fictitious or not." The two limited and specific expansions allowing for fictitious minors both expressly require that the fictious minor be a creature of law enforcement, whether in the sense that law enforcement has pretended that the minor exists when in fact he does not, or in the sense that the policeman has pretended himself to be the available minor. USSG § 4B1.5 cmt. n.1(B), (C). Conspicuously absent from this definition is the case presented here, where the "minor" in question is fictitious, but the fiction is authored not by law enforcement but by an anonymous confidence artist, encountered only by the defendant over the internet and never further corporealized or associated with police officers. Because "Sara" and "unidentified minor number 1" are such fictions— fictions created by non-law enforcement actors—they fall outside 4B1.5's definition of "minor." Accordingly, alleged contact with such fictitious minors cannot form a predicate event for purposes of determining a pattern of activity involving prohibited sexual conduct. Mr. Herhold is not subject to the pattern enhancement.

The government does not contest the point, but the presentence report implicitly takes the position that 4B1.5 simply must apply to all fictitious minors since it applies to some.[2]

---

[2] "Therefore, because this enhancement applies in instances, for example, where the minor is actually an undercover law enforcement officer, the probation office relied on the defendant's offense conduct associated with 'Sara' and 'Unidentified Victim 1,' regardless of the fact that law enforcement has been unable to make contact with

5

However, if the guidelines had intended to include all fictious minors, it would have been simple enough to omit subsections B and C of the definition of "minor," and define "minor" as an individual who had not attained the age of 18 years, whether fictitious or not. Instead, the guidelines carefully limit their definition to circumstances where police have created the minor out of whole cloth. There are obvious reasons for which the Sentencing Commission might have chosen to do so. Limiting fictitious minors to sting operations involving police ensures that defendants will only receive enhanced sentences for contact with imaginary minors about which the government has good information because the government has generated the minors itself. Limiting the definition prevents enhancement on the basis of, and thus deters, vigilante efforts or attempts at harassment by non-state actors. And it ensures that the technologically unskilled or (relevant here) mentally disabled will not expose themselves to extra years in prison through their susceptibility to online grifters. But whatever the reasons for the definition, the Court need not speculate. The definition is plain.

    Mr. Herhold also notes that "[a]t sentencing, the government bears the burden of 'prov[ing] by a preponderance of the evidence each of the facts necessary to establish a sentencing enhancement.'" *United States v. Brooks*, 648 F.3d 626, 629 (8th Cir. 2011) (quoting *United States v. Razo–Guerra*, 534 F.3d 970, 975 (8th Cir. 2008) (brackets in *Brooks*). The government does not contest Mr. Herhold's factual objections regarding the identity of "Rose William" and "Stella Paul," or his objections that none of the "minors" involved exist. While there is arguably a distinction between the government's burden to prove facts at issue by a preponderance and the government's decision to abandon a legal argument regarding agreed facts, Mr. Herhold also maintains, for purposes of his argument here, that the government's

---

"Sara" and "Unidentified Victim 1" to verify their identity." PSR ¶ 25.

abandonment of the enhancement, upon which it bears a burden, also results in forfeiture of the enhancement, even though the Court's determination is purely one of law. Counsel was unable to find any cases directly on point, but as argued above, the Court need not reach this issue.

### III. The Court Should Impose the Parties' Agreed Sentence of 188 Months.

The Court must impose a sentence on Mr. Herhold that is "sufficient, but not greater than necessary, to comply with" the aims of sentencing listed by statute. 18 U.S.C. § 3553(a); *see Gall v. United States*, 552 U.S. 38, 50 (2007) (explaining that district courts must first calculate the appropriate guideline range and then consider it alongside the 3553(a) factors, without presuming that the guideline range is reasonable). The Court must weigh the guidelines' recommended range alongside such other important sentencing goals as accounting for "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); avoiding unwarranted sentencing disparities, *id.* § 3553(a)(6); affording adequate deterrence, *id.* § 3553(a)(2)(B); protecting the public from future crimes by the defendant, *id.* § 3553(a)(2)(C); reflecting the seriousness of the offense, *id.* § 3553(a)(2)(A); promoting respect for the law, *id.*; and providing just punishment, *id.* Ultimately, the guidelines' sentencing range recommendation is merely advisory, and the sentence the Court fashions for Mr. Herhold must be particular to him and grounded in all of the 3553(a) factors. *See Gall*, 522 U.S. at 46.

Mr. Herhold takes responsibility for his conduct, in all its aspects. However, the Court must attend to the fact that Mr. Herhold suffers from several mental difficulties, as outlined above, and has done so all of his adult life. There is no evidence that Mr. Herhold ever abused or attempted in person to abuse minors. Rather, he appears to have acted on desires he may not have fully understood to obtain images of child pornography, and to get others to send or produce such images for him at a distance. Pitiably, he appears to have spent his own very limited money on

efforts not even realistically calculated to achieve such aims, sending gift cards to nameless scammers who in all likelihood never intended to act on his requests.

Mr. Herhold, who described his childhood as "abusive and hellish," has not had an easy life. In 2016, he suffered a bicycle accident that resulted in severe injury and head trauma. PSR ¶ 46. He has attempted suicide multiple times. *Id.* He has been unable to stop abusing alcohol. *Id.* ¶ 49. He has repeatedly attempted to qualify for, but been denied, social security disability benefits, requiring him to support himself without the support of parents and in spite of his disabilities. *Id.* ¶ 47. He has had difficulty forming stable personal relationships and has had, for the most part, no one to care for or advocate for him. Although he briefly formed a relationship with a woman whom he described as his fiancée, he no longer has this, and it seems likely that he will not have a relationship with his child. Although he struggles with mental challenges, Mr. Herhold is very cognizant of his misfortunes, his own (partial) responsibility for them, and the adversities he will no doubt face all his life. A sentence closer to fifteen years than twenty will punish Mr. Herhold as much as need be. He will, it is to be hoped, gain personal resources and coping strategies through classes and treatment while in custody, but the marginal benefit of extending his time in custody past a 188-month sentence is limited.

Mr. Herhold acknowledges that the seriousness of his offense militates against a sentence at the bottom of his statutory and guideline ranges, and agrees with the United States that a sentence of 188 months is appropriate.

Mr. Herhold respectfully submits that a sentence of 188 months is sufficient but not greater than necessary for the applicable purposes. 18 U.S.C. § 3553(a).

                                                    Respectfully submitted,

                                                    FEDERAL DEFENDER'S OFFICE
                                                    222 Third Avenue SE, Suite 290

Cedar Rapids, IA 52401-1509
TELEPHONE: (319) 363-9540
TELEFAX: (319) 363-9542

BY: /s/ Samuel Cross
SAMUEL CROSS
sam_cross@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE
I hereby certify that on December 31, 2020, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.
                By:   */s/ Samuel Cross*